UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
BRYAN LONEGAN, et al.,

                       Plaintiffs,         **ORDER**

        - v -

                                                         CV-04-2743 (NG)(VVP)

DENNIS HASTY, et al.,

                       Defendants.
-----------------------------------------------------------x

        Before the court are two motions implicating the scope of the protection afforded by the journalist's privilege. The first is a motion to quash four subpoenas issued by the defendants David Rardin and John Osteen to the *New York Times* and one of its reporters, Nina Bernstein (hereinafter the "*Times* Motion"). The second is a motion made by the same defendants seeking to compel testimony and the production of documents by Amnesty International USA and one of its employees, Rachel Ward (hereinafter the "Amnesty Motion"). For the reasons below, the *Times* Motion is granted in part and denied in part and the Amnesty Motion is granted in part and denied in part.

## FACTUAL BACKGROUND

        The plaintiffs in this action are attorneys who represented various individuals detained at the Metropolitan Detention Center in Brooklyn (the "MDC") in the aftermath of the September 11 attacks at the World Trade Center. They bring this action to seek redress for surreptitious audio and video surveillance of their privileged conversations with their clients conducted by personnel at the MDC. That the surveillance occurred is not in dispute, as the Office of the Inspector General of the Department of Justice has issued a report cataloguing numerous instances of surveillance captured on videotapes. Among the factual matters in dispute, and the dispute that is at the center of the motions, is the time when the plaintiffs knew, or should have known, about the surveillance. Fixing that date may be important to determining whether some or all of the claims against the defendants Rardin and Osteen are time-barred.

        Both the *New York Times* and Amnesty International USA have published reports touching on the surveillance at the heart of this action. In late June and early July of 2004, contemporaneous with the filing of this action, the *Times* published two articles authored by Bernstein. One of the articles mentioned the surveillance in passing, while the other described the instant lawsuit and the facts underlying it. One of the plaintiffs here, Olivia Cassin, was a

source for the articles. Earlier, in March 2002, Amnesty International published a report on the status of post-September 11 detainees which mentioned that various attorneys for detainees were suspicious that their interviews with their client were being recorded. Ward was one of the investigators who conducted interviews and contributed writing for that report. Another of the plaintiffs here, Brian Lonegan, was one of the attorneys interviewed for the report.

Prompted by those publications, the defendants Rardin and Osteen each subpoenaed the *Times*, Amnesty, Bernstein and Ward.[1] The subpoenas served on the *Times* sought essentially all documents concerning any communications of any kind between Bernstein and various individuals, including the plaintiffs and employees or representatives of the Legal Aid Society, conceivably related to the articles Bernstein had written. The subpoenas served on Bernstein sought the same documents requested of the *Times*, and also sought her testimony at a deposition. The subpoenas to Amnesty likewise sought a broad range of documents concerning communications between Ward and a host of individuals as well as employees or representatives of the Legal Aid Society related to those sections of the Amnesty report that discussed video surveillance at the MDC. The subpoenas served on Ward sought the same documents, and, like the subpoenas served on Bernstein, her deposition testimony as well.

The *Times* and Bernstein responded to their subpoenas by making the instant motion to quash on the basis of the journalist's privilege. Amnesty and Ward, on the other hand, submitted formal objections to their subpoenas but nevertheless produced redacted documents accompanied by a privilege log asserting, among others, the journalist's privilege. In addition, Ward appeared for her deposition and testified for four hours, but declined to answer some of the questions posed on the basis of the journalist's privilege. The defendants then made the instant motion to compel Amnesty and Ward to provide the information they have withheld.

**DISCUSSION**

The parties all agree that journalists enjoy a qualified privilege that protects their newsgathering efforts. *Gonzales v. National Broadcasting Co.*, 194 F.3d 29 (2nd Cir. 1999). The privilege protects not only confidential information, but non-confidential information as well, in recognition of the heavy burdens that would be placed on the press if litigants were free to

---

[1] Although each defendant separately served subpoenas on each of the four non-parties, the subpoenas served by Rardin were identical to the subpoenas served by Osteen.

-2-

rummage through journalists' files whenever a matter that had received attention in the press became the subject of litigation. *Id*., 194 F.3d at 35. The damage caused by the required revelation of confidential information is obvious: if sources fear that their identities will be readily subject to exposure, they will be less likely to provide information to journalists and the press's ability to perform its constitutionally protected function will be compromised. *See, e.g., Baker v. F and F Investment*, 470 F.2d 778, 782 (2nd Cir.1972). Where non-confidential information is involved, the damage is perhaps less obvious, but no less real. Requiring journalists and press organizations to respond to subpoenas on a regular basis, even when the requested documents and testimony concern non-confidential matters, imposes costs in time and money that would unnecessarily burden reporters and their employers. *E.g.*, *United States v. The LaRouche Campaign*, 841 F.2d 1176, 1182 (1st Cir. 1988) ("frequency of subpoenas would not only preempt the otherwise productive time of journalists and other employees but measurably increase expenditures for legal fees"). Moreover, ready access by litigants to reporters and their resource materials intrudes on newsgathering and editorial processes, and thus interferes with the free low of information to the public. *See, e.g., United States v. Cuthbertson*, 630 F.2d 139, 147 (3rd Cir. 1980); *see generally, LaRouche*, 841 F.2d at 1182 (detailing other types of harm caused by affording litigants unfettered access to nonconfidential press information).

Although the journalists' privilege protects both confidential and non-confidential information, the Second Circuit recognizes a distinction between the two when considering the showing that must be made to overcome the qualified privilege. Understandably, the showing for confidential information is the more stringent one. A party seeking such evidence must make a "clear and specific showing" that the material sought is "highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources." *E.g., United States v.* Cutler, 6 F.3d 67, 71 (2nd Cir 1993); *In re Petroleum Products Antitrust Litigation*, 680 F.2d 5, 7 (2nd Cir. 1982); *Gonzales*, 194 F.3d at 33; *In re Natural Gas Commodities Litigation*, 235 F.R.D. 241, 244 (S.D.N.Y. 2006). As to nonconfidential information, however, a party need only show that "the materials at issue are of *likely* relevance to a significant issue in the case, and are *not reasonably* obtainable from other available sources." *Gonzales*, 194 F.3d at 36 (emphasis added).

The movants do not dispute that the materials they seek are protected by the journalists' privilege. The court thus turns to whether they have made the necessary showings to overcome the privilege as to various items of information they seek.

*The* Times *Motion*

As noted above the subpoenas served on the *New York Times* and Bernstein are virtually identical. They each designate four categories of documents to be produced. The first category is the broadest, requiring production of all documents concerning all communications between Bernstein and any employee of the Legal Aid Society after December 1, 2003. The remaining three categories are actually subsets of the first, with each one seeking documents relating to certain types of communications between Bernstein and sixteen named individuals, all of whom are either plaintiffs or employees of the Legal Aid Society. Thus, one seeks all documents concerning conversations with the sixteen, another seeks all documents evidencing e-mail communications with the sixteen concerning any detainee, and the final one seeks e-mail communications with the sixteen concerning the video- or audiotaping of conversations between attorneys and detainees at the MDC.

Although the movants suggest that some of the information in the articles authored by Bernstein was obtained from sources who were promised confidentiality, they make no assertion that promises of confidentiality were made to any of the plaintiffs or employees of the Legal Aid Society with whom Bernstein may have communicated. The court therefore applies the less stringent test articulated in *Gonzales* applicable to non-confidential information which requires a showing (1) that the materials sought by the subpoenas are likely to be relevant to a significant issue, and (2) that they are not reasonably obtainable from another available source. 194 F.3d at 36.

To meet their burden on the first prong of the *Gonzales* test, the defendants identify but one significant issue to which the materials they seek are likely to be relevant, *viz.*, when the plaintiffs knew or should have known that their conversations with their clients at the MDC were being video- and audiotaped. Unfortunately, with one exception, the defendants have not shown that the communications covered by their subpoenas relate in any way to that issue. Except for communications between Bernstein and the plaintiff Olivia Cassin, the defendants have not made any showing that any other plaintiff or employee of the Legal Aid Society had any

-4-

communications with Bernstein that touch on that subject. They have annexed to their papers excerpts from various depositions, some of which indicate that some personnel at the Legal Aid Society communicated with Bernstein about the articles in question, but none of the excerpts suggest that any of those communications had anything to do with the question of when the plaintiffs knew or should have known they were being surveilled at the MDC. Thus, the defendants' subpoenas are largely an effort "to sift through press files in search of information supporting their claims," precisely the type of excursion condemned in *Gonzales*. 194 F.3d at 35.

As to Cassin, the defendants have pointed to one phrase in one of the two articles authored by Bernstein which arguably bears on Cassin's knowledge that she was being electronically surveilled. The article, which was published in the *Times* on June 30, 2004, did not concern the plaintiffs' lawsuit or the issue of surveillance at the MDC. Rather, it detailed the plight of a detainee who had been held at the MDC for months in solitary confinement, and who finally obtained assistance from the Legal Aid Society and Cassin through the intervention of an FBI agent who realized that there was no basis for him to be held. In describing Cassin's first meeting with the detainee at the MDC, Bernstein wrote that "she spoke with the detainee, through a thick plexiglass barrier and under the eye of a prison video camera." Nina Bernstein, *In F.B.I., Innocent Detainee Found Unlikely Ally*, N.Y. Times, June 30, 2004, at A1. Bernstein's reference to Cassin being "under the eye of a prison video camera," the defendants argue, suggests that Cassin may have told Bernstein she was aware that she was being surveilled at the time of the meeting in late 2001.

Bernstein's "under the eye of a prison video camera" phrase provides some basis, albeit slim, for believing she has information concerning what Cassin knew about being surveilled and when she knew it. If Cassin and any of the other plaintiffs knew they were being surveilled at the time of the meeting, which occurred more than three years before the defendants Rardin and Osteen were added to this action, their claims against at least those two defendants would be time-barred.[2] The information Bernstein might possess thus concerns a significant issue. And if

---

[2]The applicable statutes of limitations are three years for the plaintiffs' *Bivens* claims, *see, e.g., Tapia-Ortiz v. Doe*, 171 F.3d 150, 151 (2nd Cir. 1999), and two years from "the date upon which the claimant first has a reasonable opportunity to discover the violation" for their claims under 18 U.S.C. § 2520. *See* 18 U.S.C. § 2520(e).

she indeed possesses any information about when Cassin knew she was being surveilled, it will be relevant to the statute of limitations issue one way or the other.

As to the second prong, whether the information is available from some other source, the defendants have already deposed Cassin, the only other person who is reasonably likely to know the content of her communications with Bernstein. Although Cassin confirmed having a conversation with Bernstein in which she said she was aware of the presence of a camera during her meeting with her client at the MDC, she did not recall with specificity what she said about the matter. It is thus fair to conclude that Bernstein is the only remaining source who can testify about what Cassin said and what her statements to Bernstein may have revealed concerning her knowledge that the camera was actually recording the meeting.

The court therefore concludes that the defendants have made enough of a showing to require the *Times* and Bernstein to divulge some information otherwise protected by the qualified privilege. The range of information as to which they have overcome the privilege is narrow, however. They are entitled to obtain any documents concerning communications with Cassin that disclose, directly or indirectly, when Cassin knew she was being surveilled. They are entitled also to depose Bernstein concerning her conversations or other communications with Cassin relating to that subject. Beyond that limited area, however, the movants are granted the protective order they have sought in the alternative.

The Amnesty Motion

This motion arrives in a posture different from the *Times* motion. In contrast to the *Times* and Bernstein, Amnesty and Ward (hereafter, at times, "the respondents") produced some material responsive to the defendants' subpoenas after obtaining a waiver of confidentiality from the plaintiff Lonegan. Specifically, they produced a redacted copy of the notes of Ward's interview of Lonegan which exposed all of his comments concerning the video- and audiotaping at issue here, and Ward testified for a number of hours at a deposition. They withheld other information on the basis of the journalists' privilege, however, to the extent the information concerned non-public information obtained from other sources of information, including non-public information obtained from Lonegan about matters other than the video- and audiotaping issue. The defendants now seek to compel Amnesty and Ward to provide the information they withheld.

Although the defendants initially argued that the respondents could not assert the journalists' privilege, they have abandoned that argument in view of the showings the respondents have made concerning the newsgathering and dissemination functions they were clearly performing in preparing the report that gave rise to the subpoenas. *See von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 143-44 (2nd Cir. 1987). The defendants' remaining two arguments in support of their motion are that the respondents have waived their privilege and that, in any event, the defendants have made the necessary showings under *Gonzales* to overcome the privilege.

The defendants' waiver argument proceeds on the notion that because the respondents disclosed a portion of their notes of the Lonegan interview, they have waived their privilege with respect to all of the research that went into preparing their report. They contend that the law does not permit selective waiver of a privilege, and that "if the privilege is waived as to some of the information, all the information must be disclosed." Def. Mem. at 10. Putting aside that the authorities cited by the defendants do not support the proposition they have stated,[3] any waiver by partial disclosure typically applies only when a party is attempting to gain some tactical advantage by a partial disclosure of privileged communications. *See, e.g., United States v. Weissman*, No. S1 94 CR. 760, 1996 WL 737042, at *29-30 (S.D.N.Y. Dec. 26, 1996) (citing *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) and *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2nd Cir.), *cert. denied*, 502 U.S. 813 (1991)). As the respondents are not parties here, the defendants are unable plausibly to articulate any tactical advantage the respondents may be seeking to gain here. In any event, any waiver by partial disclosure extends only to undisclosed communications about the same subject matter. *Weissman*, 1996 WL 737042, at * 29-30, and cases cited therein; *see also In re von Bulow*, 828 F.2d 94, 102-03 (2nd Cir. 1987). Thus, to the extent any waiver has occurred here, it would extend only to any undisclosed communications with Lonegan about the subject of video- and audio surveillance at the MDC.

---

[3]Indeed, the principal case cited by the defendants, *Pugh v. Avis Rent-A-Car System, Inc.*, No. M8-85, 1997 WL 669876, at*5 (S.D.N.Y. Oct. 28, 1997), provides support for exactly the opposite proposition. In that decision, which upheld fully the journalist's privilege, the court suggested in dictum that "a journalist *might* waive the privilege by disclosing the notes, tapes or videotapes themselves to third parties." *Id*. (emphasis added). Given the context in which it was made, this statement can only be read to mean that any such waiver would extend only to the specific materials disclosed to third parties, not to any other related information in the possession of the journalist.

The waiver certainly would not extend to all of the research done by the respondents to prepare the report, which was primarily concerned with the conditions under which detainees were held at the MDC, not with the surveillance of attorney-client meetings. Here, with one possible exception discussed below, the respondents have provided information about all of their communications with Lonegan about the subject of video- and audio surveillance at the MDC. The defendants' waiver by partial disclosure argument provides no basis for requiring any additional disclosures by the respondents.

The defendants make one other waiver argument. Ward apparently provided Lonegan with a draft of the report before the final version was issued to permit him to review anything he may have disclosed for accuracy. The defendants argue that the respondents have waived their privilege with respect to that document. Although in other privilege contexts, the disclosure of a privileged document may be deemed a waiver of the privilege as to the document, the defendants have cited no authority for that proposition with respect to the journalists' privilege. Since Lonegan suggested no changes based on his review, the defendants will learn nothing about the information that he provided concerning the surveillance issue that is not contained in the final version which they already have. In the absence of any showing that there is anything else in the draft that is possibly relevant to the statute of limitations issue, the court is reluctant to hold that disclosure of the draft to Lonegan for the purpose of insuring accuracy requires them now to disclose the entire draft to the defendants.

The court thus turns to the question whether the defendants have made the necessary showings to overcome the privilege as to the information withheld by the respondents. The defendants seek both confidential and non-confidential information. Because the plaintiff Lonegan waived confidentiality as to his communications with the respondents, the less restrictive test set out in *Gonzales* applies to the information he provided to them. As to all other information in the respondents' possession, however, the respondents have established through the sworn testimony of Ward that confidentiality was promised to all of the sources for their report. Ward Dep. 26:11-24, 86:17 to 88:13 (annexed to Granger Decl. as Ex. F). Accordingly, the stricter test of *Gonzales* applies to all information other than that imparted by Lonegan.

As to Lonegan's information, the court's task is relatively simple because with one possible exception the respondents have provided all the information he imparted to them

concerning audio and video surveillance. The defendants have made no showing that any other information imparted by Lonegan has any relevance to the statute of limitations issue, or any other issue for that matter. The possible exception is a reference to an attorney's name and contact information redacted from the notes of the Lonegan interview pertaining to surveillance. The notes suggest that Lonegan advised Ward about his conversation with an attorney, who is not a party here, about whether the camera in the interview room recorded sound. The notes further suggest that the attorney told Lonegan that he or she had been advised that it did not. See Amnesty Notes of Interviews, Granger Decl. Ex. E, at AI 0012. The conversation between Lonegan and the attorney would likely be relevant to the statute of limitations issue, and the defendants should be given the opportunity to obtain the attorney's recollection of that event. Therefore, if Lonegan imparted any of the information redacted from the notes, whatever information he provided must be disclosed.[4]

As to all of the other information sought by the defendants, they have not come close to making the strict showing required by *Gonzales*. To meet their burden they have to make a "clear and specific showing that the information is: (1) highly material and relevant, (2) necessary or critical to the maintenance of the claim, and (3) not obtainable from other available sources." *Gonzales*, 194 F.3d at 31 (quoting *United States v. Cutler*, 6 F.3d 67, 71 (2nd Cir. 1993). They cite to but one paragraph in the respondents' report as evidence that they possess any information relevant to the issue. That paragraph, however, asserts only that several attorneys felt inhibited by the presence of a camera and that one "pointed out the possibility" that conversations could be lip-read. That is well short of a clear and specific showing that any relevant information exists, much less that it is highly material or necessary to their defense. Similarly, although the defendants cite several instances where Ward declined to answer questions about her research and the sources for her report, they have not clearly and specifically shown that any of the information that may have been provided in response to the questions posed was likely to be of such materiality that it was essential to the maintenance of

---

[4]The disclosure of that information does not constitute disclosure of the respondents' sources because it is not an assertion that the respondents actually communicated with the non-party attorney or that the non-party attorney provided any information to them; the disclosure is merely an assertion that Lonegan provided information about the attorney.

their statute of limitations defense.[5] It is highly doubtful that they could have made such a showing in any event because Ward testified that the respondents have no record that any other plaintiff, or any other employee of the Legal Aid Society, was interviewed or otherwise provided information for the report. Ward Dep. 93:1 to 96:4. The defendants have produced no evidence to the contrary. Accordingly, the court concludes that the defendants have not shown they are entitled to any confidential information in the possession of the respondents.

## CONCLUSION

For the foregoing reasons the *Times* motion is granted in part and denied in part such that the *Times* and Bernstein shall provide the information set forth in the opinion above but are granted a protective order as to any other information. The Amnesty motion is granted in part such that the defendants are entitled to obtain the redacted information in the respondents' interview notes concerning the non-party attorney, to the extent provided by Lonegan, and denied in all other respects.

**SO ORDERED:**

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:  Brooklyn, New York
        January 1, 2008

---

[5]Two of the questions cited by the defendants – specifically, those at page 50, lines 16-19 and at page 146, lines 19-25 – sought information imparted by Lonegan which would be relevant to the statute of limitations defense. Ward's responses to a number of other related questions during the deposition, coupled with the disclosure of the name of the attorney whose identity was redacted from the respondents' notes, will provide the defendants with the information sought by those questions.